Carl HARRISON et al., Appellants,

v.

DALLAS COURT REPORTING COLLEGE, INC., Appellee.

No. 20093.

Court of Civil Appeals of Texas, Dallas.

Oct. 19, 1979.

Randy L. Roberts, H. Ron White & Associates, Dallas, for appellants.

Robert P. Palmer, Crouch & McClain, Dallas, for appellee.

Before AKIN, ROBERTSON and HUMPHREYS, JJ.

AKIN, Justice.

On this writ of error from a default judgment rendered against him, appellant Harrison asserts two points of error: (1) The judgment is void because the appellee failed to serve process in accordance with Tex.R. Civ.P. 106 and, thus, the trial court failed to acquire personal jurisdiction over him. (2) No evidence exists in the record to support the award of damages. We agree with appellant on both points of error and, accordingly reverse the default judgment and remand for trial on the merits.

With respect to service of process, plaintiff attempted to acquire personal jurisdiction over defendant by substituted service under Tex.R.Civ.P. 106(c). Appellant argues that both types of personal service namely, personal delivery by the officer under subdivision (a) and mail delivery under subdivision (b) must be shown to be impractical before substituted service under Rule 106(c) is authorized. Thus, appellant contends, service under Rule 106(c) was improper and no personal jurisdiction was acquired over the defendant because plaintiff failed to show the impracticability of service by mail as well as service by personal delivery. We agree. Rule 106, as amended effective January 1, 1978, provides:

Unless it otherwise directs, *the citation shall be served by (a)* the officer delivering to each Defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto, *or (b)* the officer's mailing by registered or certified mail, with delivery restricted to addressee only, a true copy of the citation and with a copy of the petition attached thereto.

*Where it is impractical to secure service, as authorized by (a) or (b) as above directed,* the court, upon motion, may authorize service (c) by the officer leaving a copy of the citation with petition attached, at the usual place of business of the party to be served . . . [Emphasis added]

■ As we read this rule, the supreme court has directed that citation shall be

personally delivered by the officer under section (a) or shall be served by registered or certified mail under section (b). Both of these preferred modes of service are considered personal service. Plaintiff need not attempt both before procuring substituted service under Rule 106(c), but he must establish that *both* preferred methods are impractical before substituted service is authorized. Substituted service is only authorized where personal service cannot be obtained. *Nichols v. Wheeler,* 304 S.W.2d 229 (Tex.Civ.App.—Austin 1957, writ ref'd n. r. e.).

■ Plaintiff relies on the deputy sheriff's affidavit to show that personal service is impractical. That affidavit states:

I have made several attempts to serve the defendant, Carl Harrison, at 6102 Lake June, Dallas, Dallas County, Texas, his usual place of business. I have been to this location many times but have been unable to contact defendant personally. I have left my business card, asking that he phone me, but have received no response. The attorney has been furnished this information and requests a 106 Affidavit to serve anyone over the age of 16 years at 6102 Lake June in Dallas.

This affidavit does not show how many attempts of service were made nor the times at which service was attempted. Furthermore, it does not show whether the card was slipped under a door or left with a responsible person. We hold that the information in this affidavit is insufficient to establish that personal service is impractical.

■ In order to establish that personal service is impractical an affidavit should preferably contain the name of the person to be served, that person's residence and business addresses, and should describe the attempts at service at each address and the time of day that each attempt was made. We note that where personal service at both defendant's residence *and* place of business is impractical, then service by registered or certified mail, restricted to addressee only may also be impractical, because if defendant is not present to be

served, he may not be present to sign for the letter. This is a fact inference for the trial court to draw, but the information stated in the affidavit should be sufficient to support the inference that both methods of personal service are impractical.

■ Since the impracticality of personal service under subdivisions (a) and (b) was not established, service under Rule 106(c) was unauthorized and no personal jurisdiction over appellant was acquired. This is true because the Rules of Civil Procedure with respect to service of citation are mandatory and a failure to comply with them renders any attempted service void. *Hanover Modular Homes of Taft, Inc. v. Corpus Christi Bank & Trust Co.*, 476 S.W.2d 97 (Tex.Civ.App.—Corpus Christi 1972, no writ). Thus, the judgment must be reversed.

We turn now to appellant's second point that there is no evidence to support the trial judge's award of damages. In order to fully comprehend appellant's contention, a review of the facts is essential. Plaintiff sued defendant, a paving contractor, alleging a breach of an implied and express warranty that the paving of plaintiff's parking area was "not of a good and merchantable quality" and was not "fit for the purposes for which it was intended." Plaintiff's complaint was that part of the parking area would retain water after a rain due to improper drainage and thus it was unusable. Plaintiff pleaded damages of $4,801.50, the sum which it had paid defendant for paving the parking lot, for breach of warranty, under Tex.Bus. & Comm.Code Ann. § 17.50(a)(2), (Vernon Supp. 1978–1979), and sought treble damages and reasonable attorney's fees under § 17.50(b)(1) of the Deceptive Trade Practices Act.

■ Even though appellant defaulted, plaintiff was required to prove his damages and absent such proof, the default judgment cannot stand. *Burrows v. Bowden*, 564 S.W.2d 474 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Morgan Express v.*

*Elizabeth Perkins*, 525 S.W.2d 312 (Tex.Civ.App.—Dallas 1975, writ ref'd). Evidence of damages requires either proof of the difference in market value of what was received and what was contracted for, or proof of reasonable costs of remedying the defect.[1] *Winandy Greenhouse Construction, Inc. v. Graham Wholesale Floral, Inc.*, 456 S.W.2d 470 (Tex.Civ.App.—Fort Worth 1970, no writ). Plaintiff neither pleaded nor proved either measure of damages. The Deceptive Trade Practices Act does not extend the measure of damages beyond the well settled rules of the common law. *American Transfer and Storage Co. v. Brown*, 584 S.W.2d 284, 297 (Tex.Civ.App.—Dallas 1979, no writ).

■ Appellant contends that there is no evidence of the current value of the parking lot and no evidence of the cost of remedying the defects. Thus, he reasons that there is no competent evidence in the record to support the amount of plaintiff's damage under either the "difference in market value" or the "cost of repair" standards. We agree. The only evidence tendered by plaintiff at the default judgment hearing was the testimony of one of plaintiff's directors and two photographs showing an asphalt parking lot with standing water.

Plaintiff's director testified that defendant paved plaintiff's parking area for $4,800, that the work was performed, that defendant invoiced plaintiff for $4,801.50, and that plaintiff paid the invoice. This witness also testified that the defendant guaranteed the job for one year, without specifying the nature of the guaranty or what was guaranteed. He also testified that plaintiff had a problem with the paving because after a rain "a large puddle of water" stood on the parking area preventing the use of "approximately ten to fifteen" parking spaces. No testimony was adduced as to how many automobiles could be accommodated on the paved parking area or for what period of time after a rain part of the parking area was unusable. He also testified that defendant twice attempt-

---

1. This opinion concerns only the sufficiency of evidence to support a damage award under § 17.50(b)(1). Plaintiff raised no claim for relief under § 17.50(b)(3) or (4).

ed to correct the problem, but merely "moved the water puddle from one place to the other." None of this testimony bears on the value of the paved parking area as a whole, but it does dispel an inference that the parking lot is worthless because some of the paved area is being used. We conclude that this evidence was not evidence of the cost of remedying the defects.

 Neither do the two photographs establish plaintiff's damages. The photographs showed several cars parked on a paved lot around a puddle of standing water. No foundation was laid as to the time and place these pictures were taken, so their evidentiary value is questionable. If they are in fact, pictures of the parking lot in question, they show that part of the parking lot was being used, so they do not support the inference that the parking lot was valueless. We do not know whether the pictures show the entire lot. Thus, no inference can be drawn as to the percentage of the lot that is unusable. Neither do these photographs bear on the value of the parking lot. Consequently, they are not evidence of the difference between the current value of the paved area and the value if the lot had been as warranted. Neither are they evidence from which a nonexpert can infer the cost of remedying the defective drainage, as urged by plaintiff, nor do they lead to the inference that the cost of repair will be at least equal to the contract price paid for the paving. Indeed, the inference that a drainage ditch would cure the problem is equally probable with the inference that the entire parking lot must be repaved. Since the pictures support both inferences equally, they present no evidence that the cost of repair will be at least as much as the contract price. *Talley v. Bass-Jones Lumber Co.*, 173 S.W.2d 276, 279 (Tex.Civ.App.—Texarkana 1943, writ ref'd w. o. m.). We hold, therefore, that this evidence is incompetent to support an award of damages in the sum of $4,801.50 which the trial judge trebled to $14,404.50 in the judgment. Absent a judgment for actual damages, the award of attorney's fees under the Deceptive Trade Practices Act cannot stand. *Reiger v. DeWylf*, 566

S.W.2d 47, 48 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.).

Reversed and remanded.